IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM RUSSELL MERLEN,

    Petitioner,                        No. CIV S-08-1967 DAD P

    vs.

KATHLEEN DICKINSON[1], Warden,
California Medical Facility,

    Respondent.                      ORDER

_____/

        Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. The petition before the court challenges petitioner's judgment of conviction entered in Shasta County Superior Court on one count of gross vehicular manslaughter in violation of California Penal Code § 191.5(a). Petitioner seeks federal habeas relief on the grounds that: (1) expert testimony that petitioner was intoxicated was wrongly

---

[1] Petitioner named Sue Hubbard as the respondent in this matter. In the Answer to the Petition, respondent named Mike Knowles as the respondent. Currently, Kathleen Dickinson is the warden of the California Medical Facility. See Stanley v. California Supreme Court, 21 F.3d 359, 360 (9th Cir. 1994) ("A petitioner for habeas corpus relief must name the state officer having custody of him or her as the respondent to the petition."); Rule 2(a), 28 U.S.C. foll. § 2254. Accordingly, the Clerk of the Court will be directed to substitute in Kathleen Dickinson as the correct respondent in this action.

admitted; and (2) there was insufficient evidence introduced at trial to support the jury's finding of intoxication.

Upon careful consideration of the record and the applicable law, the undersigned concludes that petitioner's application for habeas corpus relief must be denied.

PROCEDURAL BACKGROUND

On November 3, 2005, a jury found petitioner guilty of gross vehicular manslaughter while intoxicated. (Notice of Lodging Documents on November 3, 2008 (Doc. No. 4), Clerk's Transcript on Appeal (CT) at 181.) Following his conviction and the Shasta County Superior Court's denial of his motion for new trial, petitioner was sentenced on January 4, 2006. (CT at 264.) Having found true the special allegation brought pursuant to California Penal Code § 191.5(d) that petitioner had been convicted of a prior offense of driving while intoxicated, the trial court sentenced petitioner to a state prison term of 15 years to life. (Id. at 264-66.)

Petitioner appealed his judgment of conviction to the California Court of Appeal for the Third Appellate District. (CT at 267.) On June 12, 2007, the judgment of conviction was affirmed in a reasoned opinion. (Resp't's Lod. Doc. 1 (hereinafter Opinion).) Petitioner then filed a petition for review with the California Supreme Court. (Resp't's Lod. Doc. 2 (hereinafter Petition).) On August 15, 2007, the California Supreme Court summarily denied that petition. (Resp't's Lod. Doc. 3.)

On August 21, 2008, petitioner filed the federal habeas petition now pending before the court. (Doc. No. 1.) Respondent filed an answer on November 3, 2008. (Doc. No. 7.) Petitioner has not filed a traverse. Both parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. Nos. 3, 6.)

FACTUAL BACKGROUND

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

On July 19, 2004, at approximately 9:20 a.m., defendant drove his pickup truck across double yellow lines into the oncoming lane, causing a head-on collision that resulted in the death of James DeWitt, the driver of the other vehicle.

According to the driver of a vehicle behind defendant before the accident, defendant's truck crossed the double yellow lines twice prior to the collision such that it was entirely on the wrong side of the road. On these occasions, the truck slowly reentered the correct lane.

Redding Police Officer Bruce Bonner, who had 28 years of training and experience in recognizing symptoms of drug use and investigating incidents of driving under the influence of drugs, contacted defendant briefly at the scene of the collision. He noted that defendant, who had suffered injuries from the accident, appeared dazed, his speech was "very slow and deliberate" and his eyes were bloodshot. In addition, prescription bottles for Ambien (a sleeping pill) and Wellbutrin (an antidepressant) in defendant's name were located in his vehicle. Officer Bonner was "suspicious" that defendant may have been under the influence of drugs based on his observations of defendant and the statements regarding his driving. He mentioned this to another officer at the scene and suggested that defendant be tested.

Shortly before the accident, defendant was discovered by his half brother lying down next to the front door of his home. Defendant told him that he needed a place to stay because someone was after him, but he was unable to provide a reasonable explanation why he was being pursued. Defendant's speech was very slow and somewhat slurred, his eyes were red and he was walking slower than normally. He said he was drowsy from taking antihistamines for allergies. Defendant had been at his half brother's home the previous night for approximately an hour and had looked tired and "maybe a little out of it."

Defendant's blood was drawn approximately two hours after the accident and was found to contain Ambien and low levels of Wellbutrin and methamphetamine. FN2

> FN2. Morphine, which was given to defendant by paramedics after the accident, was also found in his system.

Defendant was interviewed by another police officer at the hospital approximately two and a half hours after the accident, at which time he was coherent and able to carry on a conversation. However, defendant was not able to explain how the accident occurred, stating, "[I] was driving down the road one minute . . . and the next minute [I] was in an accident." When asked when he had last taken Ambien, defendant said he "had taken a few around

3

9:00 [a.m.]" When the officer asked defendant why he took sleeping medication before driving, defendant said, "[I] must not have taken that" and that he thought he had taken one of his other medications.

The officer who interviewed defendant at the hospital contacted him by phone approximately four months after the accident to inquire about the presence of methamphetamine in his blood. Defendant denied he had used methamphetamine and conjectured that maybe his roommate had put some of the drug in his orange juice.

Daniel Coleman, a forensic toxicologist, testified that Ambien is a "very strong depressant" that is rapidly eliminated from the body and does not build up over time. FN3 According to the manufacturer of Ambien, it remains in the system for eight hours. The window of detection of Ambien is "very limited" and "[t]he effects of the drug are very strong through that whole window." The observable effects of Ambien include drowsiness, poor coordination, poor judgment and slurred speech.

> FN3. At times during his testimony, Coleman used the generic name for Ambien, which is Zolpidem.

Coleman testified that the amount of Ambien in defendant's system was not quantified because the quality controls necessary to quantitate results are not commercially available for the drug. However, the testing did not indicate an "abusive level" of the drug. According to Coleman, the presence of Ambien in defendant's blood reflected recent usage, and the fact that the accident occurred an appreciable period of time before defendant's blood was drawn rendered it more likely that defendant was feeling the effects of the drug when the accident occurred. With regard to the methamphetamine in defendant's system, the amount was consistent with a small recent dosage or a less recent larger dosage. According to Coleman, paranoia – including "[t]he feeling that someone's out to get [you]" – is a common side effect of methamphetamine use. In addition, an individual "coming down off methamphetamine" can experience drowsiness or fatigue.

Coleman testified he generally would not make a determination as to whether an individual was under the influence based on toxicology results alone. In almost all cases, it is necessary also to look at other information, such as "signs and symptoms, witness observations [and] observations by the officer." Defendant's driving pattern before the accident, as well as his slow speech and movement and his tiredness, were consistent with being under the influence of Ambien. It was Coleman's opinion that defendant was "under the influence" and "feeling the effects" of Ambien and/or methamphetamine, although Coleman was not able to render an opinion as to the extent of defendant's impairment from those

4

|   | |
|---|---|
| 1 | substances. However, based on the fact that defendant drove his vehicle into oncoming traffic, Coleman thought it was "pretty clear |
| 2 | . . . he was impaired and not driving safely." |
| 3 | Officer Bonner testified it was his opinion that defendant was operating a vehicle under the influence of a central nervous system |
| 4 | depressant. His opinion was based on his observations of defendant after the accident, the statements of witnesses regarding |
| 5 | defendant's condition and driving before the accident, the manner in which the accident occurred, defendant's statements regarding |
| 6 | the medication he had taken and the toxicology report. |

(Opinion at 2-6.)

## ANALYSIS

I. <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. <u>See</u> <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues de novo. <u>Milton v. Wainwright</u>, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v. Murphy</u>, 331 F.3d 1062, 1067 (9th Cir. 2003). Title 28 U.S.C. § 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

5

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001). If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008). See also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

II. Petitioner's Claims

    A. Expert Testimony

Petitioner claims that Officer Bonner was not qualified to rely on the toxicology report in rendering his opinion that petitioner was driving under the influence. The California Court of Appeal rejected petitioner's argument in this regard, reasoning as follows:

"A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates." (Evid.Code, § 720, subd. (a).) An expert witness may base an opinion "on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates." (Evid.Code, § 801, subd. (b).) "Where the witness discloses special knowledge of the subject on which he undertakes to give his opinion as an expert, the question of the degree of his knowledge goes to the weight of his testimony rather than to its admissibility." ( People v. Smith (1967) 253 Cal.App.2d 711, 718 (Smith ).)

"The qualification of a person to testify as an expert witness is a matter within the sound discretion of the trial court; and its determination, in the absence of a clear abuse, will not be disturbed by a reviewing court." ( Smith, supra, 253 Cal.App.2d at p. 718.) "Error regarding a witness's qualifications as an expert will be found only if the evidence shows that the witness ""'clearly lacks qualification as an expert.""'" ( People v. Farnam (2002) 28 Cal.4th 107, 162.)

In the present matter, a voir dire of Officer Bonner was conducted outside the presence of the jury after defendant challenged his qualifications to testify as an expert on whether defendant was driving under the influence.

Officer Bonner testified that he began specializing "in the field of people being under the influence of controlled substances" in 1978 when he was in the United States Air Force and that he had been involved in drug investigations "ever since." He had received over 700 hours of training related to the use and sales of drugs, including a six-hour course addressing the recognition of symptoms and effects of a combination of illegal drugs and prescription drugs.

According to Officer Bonner, he had spoken with the doctor who taught this course about the effects of Ambien combined with methamphetamine and other drugs and had consulted with two pharmacists on the subject, as well as conducting research on the Internet. Officer Bonner had been told by drug addicts over the years that drugs such as Ambien are used "to take the edge off" methamphetamine. He testified that symptoms of Ambien use include "slowed speech," "slowed central nervous system signs" and "slowed reflexes."

Officer Bonner acknowledged he was not qualified to testify about defendant's ability to drive based only on the toxicology results for

Ambien. However, based on the reports, the witness statements and the officer's personal knowledge of the effects of various substances, in addition to the toxicology results, it was his opinion that defendant was under the influence of substances that impaired his ability to drive.

The trial court ruled that Officer Bonner was qualified to testify as an expert regarding his opinion that defendant was under the influence of a drug based on his observations of defendant and evidence from other witnesses that would be presented at trial, including the toxicology report. The court precluded the officer from rendering an expert opinion that defendant was under the influence of Ambien. However, after Officer Bonner testified further at trial regarding his qualifications, the court expanded its ruling to allow the officer to testify to his opinion that defendant was under the influence of a central nervous system depressant.

The trial court's ruling evinces no abuse of discretion. Whether a defendant was under the influence of drugs is a proper subject of expert testimony, and such testimony may be given by a police officer who has sufficient qualifications. (Smith, supra, 253 Cal.App.2d at pp. 717-718; People v. Gurrola (1963) 218 Cal.App.2d 349, 353.) Officer Bonner had close to 30 years of training and experience investigating individuals suspected of being under the influence of controlled substances. His training had included "many hours" devoted to central nervous system depressants, and he had field experience arresting individuals for driving under the influence of depressants. The trial court acted within its discretion in finding the officer qualified to offer an opinion as to whether defendant had been driving under the influence of a central nervous system depressant.

Defendant maintains Officer Bonner was unqualified to rely on the toxicology report in rendering his opinion because "[h]e had no formal medical education."FN4 He relies on People v. Williams (1992) 3 Cal.App.4th 1326 to support this assertion. Williams addressed the admissibility of a police officer's opinion that a defendant was driving under the influence of alcohol based in part on his administering of a horizontal gaze nystagmus (involuntary eye movement) test. The appellate court in that case concluded that the officer lacked sufficient expertise to attribute the results of the test to a particular cause because such testimony "rest[ed] on scientific premises well beyond his knowledge, training, or education." (Id. at p. 1334.) Consequently, the court held that the officer's testimony regarding the test should have been excluded. FN5

> FN4. Defendant offered several other bases as to why the officer was not qualified to rely on the toxicology report: (1) the officer's "opinion conflicted with the actual expert opinion of . . .

8

Coleman"; (2) he "acknowledged that many unknown variables determined the affect [sic ] of Ambien"; (3) he had never conducted a sobriety test on an individual suspected of using Ambien; and (4) "he did not know that methamphetamine has therapeutic uses or that a small amount of methamphetamine actually improves one's driving skills." To the extent these factors are relevant to the officer's expertise, they bear on the weight to be given his testimony, not its admissibility. (See Smith, supra, 253 Cal.App.2d at p. 718 [degree of knowledge of witness with special knowledge on a subject goes to weight of testimony rather than admissibility].)

FN5. Subsequent to Williams, the California Supreme Court held that the horizontal gaze nystagmus test was subject to proof of general acceptance by the scientific community under a "Kelly-Frye" analysis (see People v. Kelly (1976) 17 Cal.3d 24; Frye v. United States (D.C.Cir.1923) 293 Fed. 1013), and that, if such proof was presented, a police officer's evaluation of the test would be admissible without further expert testimony. (People v. Leahy (1994) 8 Cal.4th 587, 604, 611.)

Contrary to defendant's contention, there is little similarity between the officer's reliance on a horizontal gaze nystagmus test in Williams and Officer Bonner's reliance here on the toxicology results. Establishing that the results of a horizontal gaze nystagmus test are significant in determining whether an individual is under the influence of alcohol requires foundational evidence not at issue in the present matter. Unlike the circumstances in Williams, it was not necessary for Officer Bonner to interpret or evaluate the toxicology report. Officer Bonner needed no specialized medical or scientific knowledge to infer, based on the results of the toxicology report, that defendant had various drugs in his system.

Officer Bonner did not render a "scientific opinion" about the significance of the amounts of Ambien found in defendant's system or testify that the results of the toxicology report "showed that [defendant] was under the influence," as asserted by defendant. He merely relied on the fact that there were various substances in defendant's system, combined with other information he acquired regarding defendant's condition and driving at or near the time of the accident, to form an opinion regarding defendant's state of sobriety. Defendant asserts that Officer Bonner's testimony established he would not have been able to render the opinion that defendant was under the influence of a drug without the toxicology

> results. Even if we assume this assertion is accurate, we conclude that the officer properly could rely on the fact that there were drugs in defendant's system to confirm his suspicions regarding defendant's impairment.
>
> We are bound to uphold a trial court's determination regarding a witness's qualification to testify as an expert unless a clear absence of qualification is manifest. Officer Bonner's qualifications to testify as an expert on determining whether an individual is under the influence of controlled substances were more than sufficient. As an expert on this subject, he was entitled to rely on the toxicology results in the manner he did as a factor in forming his opinion. (See Evid.Code, § 801, subd. (b).)

(Opinion at 6-12.)

Initially, the Court notes that to the extent that petitioner is claiming that Officer Bonner's testimony was erroneously admitted at trial under California law, his claim is not cognizable on federal habeas review. 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67-68 (reiterating that "it is not the province of a federal habeas court to reexamine state court determinations on state law questions"); Smith v. Phillips, 455 U.S. 209, 221 (1982) ("A federally issued writ of habeas corpus, of course, reaches only convictions obtained in violation of some provision of the United States Constitution."); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991).

"Habeas relief is available for wrongly admitted evidence only when the questioned evidence renders the trial so fundamentally unfair as to violate federal due process." Jeffries v. Blodgett, 5 F.3d 1180, 1192 (9th Cir. 1993). See also Larson v. Palmateer, 515 F.3d 1057, 1065 (9th Cir. 2008) (because federal habeas relief is limited to such instances, "[t]he correctness of the trial court's evidentiary ruling as a matter of state law is irrelevant to our review[.]"); Windham v. Merkle, 163 F.3d 1092, 1103 (9th Cir. 1998). While adherence to state evidentiary rules suggests that the trial was conducted in a procedurally fair manner, it is certainly possible to have a fair trial even when state standards are violated; conversely, state procedural and evidentiary rules may countenance processes that do not comport with fundamental fairness. Jammal, 926 F.2d at 919 (citing Perry v. Rushen, 713 F.2d 1447, 1453 (9th Cir. 1983)). The due process inquiry in federal habeas review is whether the admission of

1  evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair.  Payne v.
2  Tennessee, 501 U.S. 808, 825 (1991); Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995).
3  The Supreme Court has admonished that the category of infractions that violate "fundamental
4  fairness" has been defined very narrowly.  Estelle, 502 U.S. at 72.  See also Holley v.
5  Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (Noting that the "Supreme Court has made
6  very few rulings regarding the admission of evidence as a violation of due process.")  Thus, a
7  habeas petitioner "bears a heavy burden in showing a due process violation based on an
8  evidentiary decision."  Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir.), amended by 421 F.3d
9  1154 (9th Cir. 2005).

10       Here, petitioner was not denied a fundamentally fair trial by the admission of
11  Officer Bonner's expert testimony that, in his opinion, petitioner had been driving under the
12  influence of a central nervous system depressant.  (Reporter's Transcript on Appeal (RT) at 314.)
13  Officer Bonner cited several factors as the basis for his conclusion, including his observations at
14  the accident scene that petitioner looked dazed and disheveled, had bloodshot eyes, and formed
15  words very slowly (id. at 309, 315); and the discovery of two prescription medications in
16  petitioner's truck shortly after the crash, including Ambien, a fast-acting sleeping pill (id at 310,
17  317-318).  Based on these facts, Officer Bonner was "suspicious" that petitioner had been driving
18  while intoxicated, but lacked enough information to form an opinion at that time.  (Id. at 310.)
19  Upon viewing the police report, Officer Bonner factored in witness statements that petitioner had
20  "drift[ed] into oncoming traffic twice before the accident occurred" (id. at 314); a statement from
21  petitioner's brother describing petitioner's condition both "moments before the collision" and the
22  previous night (id. at 311); and petitioner's own statements about his activities preceding the
23  crash.  (Id.)

24       Petitioner has no quarrel with any of these bases for Officer Bonner's opinion.
25  (See Petition at 22) ("Here, Officer Bonner was qualified to testify that based on observations
26  such as appellant's red eyes, erratic driving, slow speech, etc., that he believed appellant was

under the influence of a drug.") However, according to petitioner, none of these factors, either alone or in combination, show that petitioner had driven under the influence of a depressant. (See, e.g., id. at 23) (observable factors "did not establish that appellant was under the influence.") Rather, according to petitioner, all were consistent with him being "extremely tired" or "in shock." (Id. at 7, 23.) Thus, petitioner claims, the necessary lynchpin of Officer Bonner's opinion was the toxicology report showing that Zolpidem, or Ambien, was present in his system shortly after the crash. (Id. at 23; see also RT at 313 (Officer Bonner's testimony regarding the role played by the toxicology report); CT at 72 (toxicology report)).

Assuming *arguendo* that the toxicology report was, as petitioner characterizes it, a necessary lynchpin of Officer Bonner's opinion, petitioner has not established that he is entitled to federal habeas relief. Petitioner claims that Officer Bonner was "not qualified to opine on the meaning of the toxicology test, [specifically] that the toxicology report demonstrated that appellant was under the influence." (Id. at 20.) However, the defense was allowed to cross-examine Officer Bonner regarding the basis for his opinion. (RT at 319-29.) Counsel on behalf of petitioner argued to the jury that Officer Bonner's observations of petitioner at the time of the accident did not support the expressed opinion that petitioner was driving under the influence. (RT at 460-61.) This record does not support a claim that the admission of Bonner's expert opinion testimony was so unduly prejudicial that it rendered petitioner's trial fundamentally unfair.

Moreover, in determining that the trial court did not abuse its discretion in allowing this testimony, the state appellate court noted Officer Bonner's many years of training and field experience investigating persons suspected of drug use, including central nervous system depressants. (Opinion at 9.) The court concluded that such training was "more than sufficient" for Officer Bonner to opine as an expert on whether petitioner was under the influence of controlled substances. (Id. at 11.) Moreover, the state appellate court concluded that, as an expert, Bonner was "entitled to rely on the toxicology results" as a factor in forming his opinion.

(Id. at 11-12.)  Such analysis does not reflect an unreasonable application of clearly established federal law.

Nothing in the trial court's ruling admitting this testimony or the state appellate court's analysis of this evidentiary issue under California law, was so fundamentally unfair as to violate petitioner's federal right to due process.  Nor was the state courts' resolution of this evidentiary issue contrary to or an unreasonable application of federal law.  Accordingly, petitioner is not entitled to federal habeas relief with respect to his claim that Officer Bonner's expert opinion testimony was erroneously admitted at his trial.

B.  Sufficiency of Evidence

Petitioner also claims that there was insufficient evidence introduced at his trial to support his conviction for violating California Penal Code 191.5(a).  Specifically, petitioner asserts that there was insufficient evidence to establish that he was under the influence of a drug when the crash in which he was involved occurred.

The California Court of Appeal specifically rejected petitioner's argument that there was insufficient evidence to support the jury's finding that he was intoxicated.  The state appellate court reasoned as follows:

> [W]e conclude there was ample evidence that defendant was under the influence of a drug when the accident occurred. While at the scene of the accident, Officer Bonner became suspicious that defendant was under the influence of a drug based on defendant's slow and deliberate speech, his bloodshot eyes and dazed appearance, and the presence of prescription bottles for Ambien and Wellbutrin in his truck, as well as a witness's description of his erratic driving pattern before the accident.  Defendant's half brother testified that defendant exhibited similar physical symptoms shortly before the accident, resolving the question of whether defendant's physical condition was caused by the accident.
>
> Approximately two hours after the accident, defendant tested positive for Ambien, a drug that remains in the body for only a short time and has a very strong effect on the user while it is in the system. Defendant admitted taking Ambien before the accident, although he retracted his admission when asked why he took sleeping medication before driving.  According to the toxicologist who testified at the trial, defendant's driving pattern before the

> accident, as well as his slow speech and movement and his tiredness, were consistent with being under the influence of Ambien. Both the toxicologist and Officer Bonner rendered opinions that defendant was impaired at the time of the accident.
>
> Defendant claims "[t]he observable circumstantial evidence that was related by all the people who observed [his] condition that morning indicated that he was not under the influence" and that the toxicology report did not establish he was under the influence of a drug. We disagree that the evidence regarding defendant's condition indicated he was not under the influence. Defendant would have us view each piece of evidence in a vacuum, rather than " 'in light of the record as a whole' " ( People v. Carpenter, supra, 15 Cal.4th at p. 387), as we are required to do when reviewing the sufficiency of the evidence. While each piece of evidence, considered separately, could have supported an innocent explanation for defendant's condition, the evidence taken as a whole was more than sufficient to establish that defendant was under the influence of a drug at the time of the accident.

(Opinion at 12-14.)

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 368, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "[T]he dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318). "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). In order to grant the writ, the federal habeas court must find that the decision of the state court reflected an objectively unreasonable application of Jackson and Winship to the facts of the case. Id. at 1275 & n. 13.

/////

The court must review the entire record when the sufficiency of the evidence is challenged in habeas proceedings. Adamson v. Ricketts, 758 F.2d 441, 448 n. 11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987). It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. If the trier of fact could draw conflicting inferences from the evidence, the court in its review will assign the inference that favors conviction. McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994). "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." United States v. Cordova Barajas, 360 F.3d 1037, 1041 (9th Cir. 2004) (internal quotation marks, brackets and citation omitted). In addition, "the assessment of the credibility of witnesses is generally beyond the scope of review." Schlup v. Delo, 513 U.S. 298, 330 (1995).

The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict. United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991). Thus, "[t]he question is not whether we are personally convinced beyond a reasonable doubt" but rather "whether rational jurors could reach the conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991). The federal habeas court determines sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law. Jackson, 443 U.S. at 324 n. 16; Chein, 373 F.3d at 983.

Pursuant to California law,

> Gross vehicular manslaughter while intoxicated is the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of Section 23140, 23152, or 23153 of the Vehicle Code . . .

Cal. Penal Code §191.5(a). Section 23152(a) of the Vehicle Code prohibits driving a vehicle "under the influence of any alcoholic beverage or drug[.]"

Here, viewing the evidence in the light most favorable to the jury's verdict, the undersigned concludes that there was sufficient evidence introduced at petitioner's trial from

which a rational trier of fact could have found beyond a reasonable doubt that petitioner was under the influence of a drug when the accident occurred. Officer Bonner testified, as described above, about petitioner's physical condition at the scene of the accident and the bottles of prescription medication found in his car, including one containing Ambien, a central nervous system depressant. Another witness, forensic toxicologist Dr. Coleman, testified that the presence of Zolpidem (otherwise known as Ambien) in petitioner's blood two hours after the accident indicated "recent usage" (RT at 255) and that the effects of the drug, during the eight-hour period following ingestion, include "poor coordination . . . poor judgment . . . very similar to someone being drunk." (Id. at 257.) Dr. Coleman also characterized petitioner's behavior at the time of the accident as "consistent with someone who's under the influence of Zolpidem." (Id. at 258.)

As the California Court of Appeal noted, other evidence supporting the jury's verdict of intoxication included petitioner's own statement (subsequently retracted) that he had taken "a few" Ambien roughly twenty minutes before the accident (id. at 232); testimony by a witness to the accident that petitioner had crossed over the double yellow lines into oncoming traffic twice immediately before colliding with the victim's van (id. at 139); and testimony by petitioner's half-brother that, the night before the crash, petitioner appeared "tired . . . maybe a little out of it," and on the morning of the crash was walking and talking slowly and slurring his speech. (Id. at 381, 398.)

Petitioner argues that all of this evidence, aside from the toxicology report, is consistent with him having been merely sleepy or in shock. However, petitioner fails to acknowledge that this evidence is equally, if not more, consistent with intoxication. Petitioner further claims that the toxicology report cannot tip the balance in support of a finding that he was under the influence of a depressant, since Dr. Coleman testified that the amount of Ambien found in petitioner's system after the accident was "neither large nor abusive." (Petition at 22.) But Dr. Coleman's testimony regarding the effects of Zolpidem – including drowsiness, poor judgment,

and poor coordination – was not about a large or abusive dose, but any dose, i.e.,"the presence of Zolpidem" in someone's system.  (RT at 257, 261.)  Based on the toxicology report and other evidence consistent with intoxication, a rational jury could have found beyond a reasonable doubt that petitioner was intoxicated and driving under the influence of drugs at the time of the crash. Therefore, petitioner is not entitled to federal habeas relief with respect to his insufficiency of the evidence claim.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. The Clerk of Court is to substitute Kathleen Dickinson, Warden, California Medical Facility, as respondent in the docket of this case.

2. Petitioner's application for a writ of habeas corpus (Doc. No. 1) is denied.

3. Petitioner has made a substantial showing of the denial of a constitutional right in the following issues presented in the instant petition: inadmissibility of expert testimony on intoxication and insufficient evidence to support a finding of intoxication.  Accordingly, a certificate of appealability is issued in the present action on those claims. 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b).

DATED: June 30, 2010.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:003
merlen1967